**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ROSEANN FERRARA,
*on behalf of herself and all*
*others similarly situated,*                                     Case No.:

      Plaintiff,

v.

                                            **CLASS**

LCS FINANCIAL SERVICES                           **REPRESENTATION**
CORPORATION, *a foreign*
*for-profit corporation,*

      Defendant.
_____/

## COMPLAINT

**COMES NOW**, Plaintiff, ROSEANN FERRARA (hereinafter, "Plaintiff"), by and through the undersigned counsel, on behalf of herself and all others similarly situated, and sues Defendant, LCS FINANCIAL SERVICES CORPORATION (hereinafter, "Defendant"). In support thereof, Plaintiff alleges:

## INTRODUCTION

1.     This is a class action brought pursuant to Rule 23, Federal Rules of Civil Procedure, against Defendant for its routine and systematic violations of the Telephone Consumer Protection Act, Title 47 United States Code, Section 227 (hereinafter, "TCPA") and the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes, Section 501.201 *et seq.* (hereinafter, "FDUTPA").

2.      In 1991, Congress enacted the TCPA[1], a consumer protection and privacy statute enacted in response to a growing number of consumer complaints regarding certain telemarketing practices.

3.      The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers" when calling cellular telephones without appropriate consent.

4.      FDUTPA is also a consumer protection statute.  As such, FDUTPA's provisions are to be construed liberally to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

5.      In the instant case, Defendant routinely, systematically, and unlawfully placed calls to Plaintiff's and Class Members' cellular telephones using either an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), and/or an artificial or pre-recorded voice (hereinafter, "APV") without Plaintiff's and Class Members' prior express consent or prior express written consent to do so.

6.      More specifically, Defendant routinely, systematically, and unlawfully attempted to convey to Plaintiff and Class Members information regarding their respective lien settlement options associated with debts known to be discharged in Plaintiff's and Class Members' respective bankruptcies.

7.      Defendant attempted to convey such information to Plaintiff and Class Members by placing calls to their cellular telephones with either an ATDS, a PTDS, and/or an APV

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA).

without Plaintiff's and Class Members' prior express consent to do so.  Defendant's conduct is in violation of the TCPA and FDUTPA.

## PARTIES, JURISDICTION & VENUE

8.     Jurisdiction of this Court arises under 47 United States Code, Section 227(b)(3) and 28 United States Code, Section 1337, as the case concerns a federal question relating to a Federal Act, namely the TCPA.  Supplemental jurisdiction exists for the FDUTPA claims pursuant to 28 United State Code, Section 1367.  Declaratory relief is available pursuant to 28 United States Code, Sections 2201 and 2202.

9.     More specifically, the TCPA violations at issue in this action occurred in all counties in the State of Florida, thereby conferring jurisdiction on the District Court of the Middle District of Florida, Tampa Division, pursuant to 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1337, as well as Florida Statutes, Section 501.211.

10.     Venue is proper before this Court pursuant to 28 United States Code, Section 1391(b)(1), as Defendant is deemed to be resident of Florida pursuant to 28 United States Code, Section 1391(d).

11.     More specifically, Defendant is subject to personal jurisdiction in all districts in the State of Florida based on its sufficient contacts and business transactions therein.  *See Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Consol Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1293 (11th Cir. 2000); *Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 182 (5th Cir. 1992); *Sofrar, S.A. v. Graham Eng'g Corp.,* 35 F.Supp.2d 919, 921 (S.D. Fla. 1999).

12.     Defendant does business in all counties located in this District.

13.     Other putative Class Members throughout the State of Florida and the United States also received telephone calls to their cellular telephones from Defendant in violation of the FDUTPA and the TCPA, respectively.

14.     Defendant is a debt collection agency, a telemarketing agency, and foreign for-profit corporation existing under the laws of the State of Colorado that, itself and through its employees and representatives, regularly places calls to individuals in the State of Florida and throughout the United States of America to either collect debts or telemarket their services and products to consumers regarding their respective lien settlement rights and options.

15.     Any and all and all necessary conditions precedent to the bringing of this action have either occurred or have been excused by the Defendant.

## REPRESENTATIVE'S GENERAL ALLEGATIONS

16.     The TCPA, 47 United States Code, Section 227, was enacted by Congress in 1991 in an effort to address Congressional concern that a growing number of telemarketing practices invade consumer privacy.[2]   The TCPA was designed to protect individual's privacy rights and public safety interests while balancing commercial freedom of speech and trade.[3]   The TCPA gives rulemaking authority to the Federal Communications Commission (FCC) to prescribe regulations to implement the requirements of the TCPA.  *See* 47 U.S.C., § 227(b)(2).

17.     The TCPA regulates the use of automated telephone equipment, also known as "autodialers" or "robodialers," which have the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

---

[2] *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 23 F.C.C.R. 559 (2008).
[3] *In the Matter of the Tel. Consumer Prot. Act of 1991,* 7 F.C.C.R. 2736 (1992).

18.     The TCPA makes it illegal to use automatic telephone dialing systems (i.e., autodialers) to place calls to a cellular telephone (other than for an emergency purposes) unless the caller has the called party's prior express consent to make such a call.

19.     More specifically, in 2003 the FCC issued a Report and Order addressing, in part, autodialed and prerecorded message calls made to cellular telephone numbers.  The FCC affirmed that, with two narrow exceptions, it is unlawful to make *any* call using an automatic telephone dialing system or artificial or prerecorded message to any wireless number.  The exceptions, inapplicable to the instant case, include calls made for emergency purposes and those made with prior express consent.[4]

20.     With respect to autodialed *debt collection* calls, in a 2008 Declaratory Ruling, the FCC clarified that autodialed and prerecorded or artificial message calls to a cellular telephone number by or on behalf of a creditor are permitted only if the calls are made with the prior express consent of the called party.  Prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and *provided during the transaction* that resulted in the debt owed.[5]

21.     At all material times herein, Defendant places telemarketing calls, attempting to solicit Plaintiff to settle her lien attendant to a discharged consumer mortgage, referenced by original account number ending in -7033 or Defendant's account number ending in -8751 (hereinafter, the "Debt").

22.     At all material times herein, Defendant neither possessed prior express consent,

---

[4] *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 F.C.C.R. 14014, 14115-16 (2003).
[5] 23 F.C.C.R. at 564-65. (emphasis added).

nor possessed prior express *written* consent,[6] to call Plaintiff's cellular telephone using an ATDS, a PTDS, or an APV.

23.     More specifically, at all material times herein, Defendant is not attempting to collect debt and as such, is not placing calls by a creditor or on behalf of a creditor in an attempt to collect the Debt.   Therefore, Defendant does not possess prior express to call Plaintiff by virtue of Plaintiff's Debt.

24.     Alternatively, if Defendant's calls were placed to Plaintiff in an attempt to collect the Debt, Defendant's prior express consent to call Plaintiff's cellular telephone was revoked by operation of law upon Defendant's receipt of notice of Plaintiff's Bankruptcy Case.[7]

## REPRESENTATIVE'S FACTUAL ALLEGATIONS

25.     On or about September 19, 2012, Plaintiff filed a Chapter 7 bankruptcy case in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, referenced by bankruptcy case number 8:12-bk-14252-KRM (hereinafter, "Bankruptcy Case").   Please see attached a true and correct copy of Plaintiff's Bankruptcy Case docket labeled as **Exhibit A1-A12**.

26.     The Debt was listed in Plaintiff's Bankruptcy Case when filed.

27.     On or about September 23, 2012, Clerk of the Bankruptcy Court sent JP Morgan Chase Bank, N.A. (hereinafter, "Chase") the *Notice of Commencement of Case, Section 341*

---

[6] *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, FCC 12-21,* 27 F.C.C.R. 1830, 1844 (Feb. 15, 2012), stating that prior express written consent is consent that was (1) in writing, bearing the signature of the person providing consent; (2) specified the telephone number to which consumer was consenting to be called; (3) clearly authorized the company to call consumer using an automatic telephone dialing system or prerecorded message for telemarketing purposes; and (4) was not a condition of purchasing goods or services.

[7] *See* 11 U.S.C., Section 362, "this section (. . .) operates as a stay, applicable to all entities, of (. . .) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. . . ."

*Meeting of Creditors, and Fixing Deadlines* (hereinafter, "Notice").

28.     On or about December 19, 2012, Plaintiff's debts, including the Debt, were discharged pursuant to the *Discharge of Debtor* (hereinafter, "Discharge").[8]

29.     On or about December 21, 2012, Clerk of the Bankruptcy Court declared under penalty of perjury that he sent Chase notice of Plaintiff's Discharge.

30.     On or before December 31, 2012, Chase sold or assigned the Debt to Defendant for servicing, settlement, and/or collection, at which time Chase advised Defendant of Plaintiff's Bankruptcy Case and Discharge.   Alternatively, Defendant acquired knowledge of Plaintiff's Bankruptcy Case via a search of public records.   In either circumstance, Defendant was aware of Plaintiff's Bankruptcy Case and the Discharge of the Debt.[9]

31.     On or about December 31, 2012, despite having actual knowledge of Plaintiff's Bankruptcy Case and Discharge, Defendant sent Plaintiff a letter regarding the Debt and her lien settlement options.   Please see attached a true and correct copy of said letter labeled as **Exhibit B1-B2**.

32.     Defendant's letter contained the following language, "although [your] bankruptcy may have extinguished your personal liability for this debt, according to our records, our client still holds a lien against your property."   This language evidences both Defendant's knowledge of Plaintiff's Bankruptcy Case and Discharge, as well as Defendant's knowledge of revocation of any prior express consent to call Plaintiff's cellular telephone using an ATDS, a PTDS or an APV.

---

[8] The permanent injunction that extends from Plaintiff's Discharge continues to act as a prohibition on further Debt collection from Plaintiff, including through the use of an ATDS, a PTDS, or an APV. *See* 11 U.S.C., Section 524.
[9] *See* http://www.lcsfin.com/solutions/bankruptcyservices.html, and Exhibit B1.

33.     On or about May 13, 2013, despite having actual knowledge of Plaintiff's Bankruptcy Case, Discharge, and Order, Defendant sent Plaintiff a letter in an attempt to convey lien settlement information associated with the Debt.  Please see attached a true and correct copy of said letter labeled as **Exhibit C1-C2**.

34.     Said letter contains the following language:

> [A]ccording to our records our client holds a valid lien against your property. Should you decide to refinance or sell the property our client's lien will need to be released. In order to avoid issues associated with this remaining lien, there may be options available to you, if you qualify:
>
> *   Lien Settlement. Our client is willing to accept a lump sum payment to release the lien on the above referenced property.
> *   Installment Options
>
> [Defendant] offers a variety of means to assist in the resolution of secured liens. (. . .) you are advised that [Defendant] is deemed to be a debt collector and may be attempting to collect a debt, and any information will be used for that purpose. . . .

**Exhibit C1-C2**.

35.     Defendant placed numerous telephone calls to Plaintiff in an attempt to solicit to Plaintiff to settle or resolve her lien allegedly associated with the Debt.

36.     Defendant's telephone calls, as more specifically alleged below, were made to Plaintiff's cellular telephone number (813) 505-7543 (herein, "cellular telephone") using an ATDS, a PTDS, or an APV.

37.     Defendant's telephone calls, as more specifically alleged below, were made in willful and knowing violation of the TCPA.

38.     Plaintiff is the owner, regular user, and possessor of a telephone with the assigned

8

to a cellular telephone service, namely (813) 505-7543 (i.e., cellular telephone).

39.     Defendant made calls to Plaintiff's cellular telephone using an ATDS or a PTDS.

40.     Furthermore, Defendant made calls to Plaintiff's cellular telephone using an APV.

41.     At no time herein did Defendant have Plaintiff's prior express consent to place any calls to Plaintiff's cellular telephone using an ATDS, a PTDS, or use an APV.

42.     Further, at no time herein did Defendant have Plaintiff's prior express written consent to place marketing calls to Plaintiff's cellular telephone using an ATDS, a PTDS or an APV.[10]

43.     More specifically, Defendant never obtained Plaintiff's prior express written consent, namely consent that was in writing, bearing the signature of the person, Plaintiff, providing consent, that specified the telephone number to which Plaintiff or Class Members were consenting to be called, that clearly authorized the company to call Plaintiff or Class Members using an automatic telephone dialing system or prerecorded message for telemarketing purposes, and was not a condition of purchasing goods or services.

### *Telemarketing Calls*

44.     Defendant's calls, placed to Plaintiff's cellular telephone, were not made for emergency purposes.

45.     On or about February 26, 2013, at approximately 11:15 a.m. EST, Defendant

---

[10] On February 15, 2012, the FCC released a Declaratory Ruling advising that, effective October 16, 2013, if an initiated or made a telemarketing call using an automatic telephone dialing system to a cellular telephone service, it could only be lawfully done if the caller had or obtained the called party's prior express *written* consent. *See In re: Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (February 15, 2012); FCC Declaratory Ruling 12-21 , __ FCC Rcd ___ (Feb. 15, 2012).

called Plaintiff's cellular telephone using an ATDS or a PTDS.

46.     On the immediately aforementioned call, Defendant left Plaintiff a voicemail on

Plaintiff's cellular telephone using an APV, which stated:

> Hello this message is for Roseann F. Ferrara.  If we have reached
> the wrong number for this person please call at 855.549.5610 to
> remove your number.  If you are not Roseann F. Ferrara please
> hang up. If you are Roseann F. Ferrara please continue to listen to
> this message.  Ms. Ferrara you should not listen to this message so
> that other people can hear it, as it contains personal and private
> information.  This is Sarah Bush from LCS Financial Services.
> This may be an attempt to collect a debt by a debt collector and
> any information obtained will be used for that purpose.  Roseann
> F. Ferrara please contact me regarding a personal business matter
> at 866.662.9087.  Thank you.

(hereinafter, "Automated Voicemail").

47.     Between March 1, 2013 and November 8, 2013, Defendant called Plaintiff's

cellular telephone using an ATDS or a PTDS at least eight (8) times.

48.     On each of the aforementioned calls, Defendant used an APV, leaving Plaintiff a

voicemail message or her cellular telephone identical to the Automated Voicemail.

49.     Despite having neither prior express consent nor prior express written consent to

telemarket Plaintiff using an ATDS, APTDS or an APV, Defendant continues to call Plaintiff,

TCPA Class Members, and FDUTPA Sub-Class Members to telemarket lien resolution services

in violation of the TCPA.

50.     Defendant's conduct, as described herein, is a knowing, willful, and continuing

violation of Plaintiff's rights, as enumerated under the TCPA.

51.     Given Defendant's conduct and its apparent intention and ability to continue to telemarket Plaintiff and Class Members in violation of the TCPA, Plaintiff, TCPA Class Members, and FDUTPA Sub-Class Members have no adequate remedy at law.

52.     Plaintiff has retained LeavenLaw as counsel for the purpose of pursuing this matter against Defendant, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services and reimburse them for costs expended.

53.     United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made using any automatic telephone dialing system or an artificial or pre-recorded voice to Plaintiff's cellular telephone in violation of the TCPA or the regulations proscribed thereunder.

54.     Additionally, United States Code, Title 47, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made using any automatic telephone dialing system or an artificial or prerecorded voice to Plaintiff's cellular telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder. The TCPA also provides for injunctive relief.  47 U.S.C., Section 227(b)(3)(a).

55.     Florida Statute, Section 501.211 provides for an award of actual damages and an award of attorneys' fees and costs to Plaintiff should Plaintiff prevail in this manner.

56.     As of the date of this complaint, Defendant has not initiated a lawsuit in an effort to collect the Debt.  Likewise, no final judgment regarding the alleged Debt has been obtained by, or transferred to, Defendant.

## CLASS ACTION ALLEGATIONS

57.     Defendant's business practice "specialize[s] in the recovery of mortgage (. . .)

11

loans" by using an "adaptive approach to recovery start[ing] with analyzing portfolio, account and borrower information, and then adjusting recovery strategy based on these results" including "[a]ccount scrubbing against real-time bankruptcy data redirects files to a specialized bankruptcy department."  Please see attached a true and correct copy of the relevant pages of Defendant's website labeled as **Exhibit D1-D2**.[11]

58.     Further, Defendant's specialized "bankruptcy services guard against risk and error" by:

a.   "Scrub[bing] accounts every 20 minutes for bankruptcy";

b.   "Monitor[ing] Chapter 7 and Chapter 13 bankruptcy cases";

c.    "Ensur[ing] compliance with federal regulations"; and

d.   "Send[ing] post-discharge Chapter 7 secured lien letters."

Please see attached a true and correct copy of the relevant page of Defendant's website labeled as **Exhibit E**.[12]

59.     Defendant is fully aware of the TCPA and the Bankruptcy Code, namely the automatic stay and permanent injunction that extends from the discharge of debts, as Defendant's "General Counsel monitors and maintains standards of compliance with federal, state and industry regulations that govern debt collection."  Please see attached a true and correct copy of the relevant page of Defendant's website labeled as **Exhibit F**.[13]

60.     Despite its aforementioned admitted knowledge of the laws at issue in this action, Defendant routinely and systematically violates the TCPA, the Bankruptcy Code, and/or

---

[11] *See* http://www.lcsfin.com/solutions/collectionsolutions.html#more (last viewed September 26, 2014).

[12] *See* http://www.lcsfin.com/solutions/bankruptcyservices.html (last viewed September 26, 2014).

[13] *See* http://www.lcsfin.com/thelcsdifference/complianceandtechnology.html#more (last viewed September 26, 2014).

FDUTPA by calling consumers, including Plaintiff and Class Members, on their cellular telephones using an ATDS, a PTDS, and/or an APV, for telemarketing, and not for informational or emergency purposes.   More specifically, Defendant conveyed information to Plaintiff and Class Members regarding liens previously securing debts that have been discharged in bankruptcy and its marketing of future lien resolution services in return for valuable consideration.

61.      Pursuant to 23(a) and 23(b)(2) and (b)(3), Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of herself and all others, constituting a class defined as:

> All persons in the United States who, on or after four years prior to the date of the filing of this Complaint received a non-emergency telephone call from Defendant to a cellular telephone wherein Defendant used an ATDS, a PTDS, or an APV, for the purpose of telemarketing and soliciting the called party regarding lien settlement wherein Defendant did not possess prior express consent or prior express written consent to place such call (hereinafter, "TCPA Class Members" or "TCPA Class") as those terms are given meaning under the TCPA and the regulations promulgated thereunder.

Excluded from the TCPA Class is the Defendant, and any entities in which the Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

62.      Pursuant to 23(a) and 23(b)(2) and (b)(3), Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of herself and all others, constituting a sub-class defined as:

> All persons in the State of Florida who, on or after four years prior to the date of the filing of this Complaint received a non-emergency telephone call from Defendant to a cellular telephone

wherein Defendant used an ATDS, a PTDS, or an APV, for the purpose of telemarketing or soliciting the called party regarding lien settlement wherein Defendant did not possess prior express consent or prior express written consent to place such calls in violation of the TCPA (hereinafter, "FDUTPA Sub-Class Members" or "FDUTPA Sub-Class").

Excluded from the FDUTPA Sub-Class is the Defendant, and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

63.     The TCPA Class and the FDUTPA Sub-Class shall from time to time herein be collectively referred to as "Class Members" or "Classes."

64.     This action is properly brought as a class action under Rule 23 for the following reasons:

a.     The TCPA Class consists of thousands, if not tens of thousands of persons, a number so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.     There is a well-defined community of interest in the questions of law and fact involved affecting TCPA Class Members.  Among the questions of law and fact which are common to the TCPA Class, and which predominate over questions affecting individual TCPA Class Members, are the following:

i.     Whether Defendant made calls to Plaintiff's and TCPA Class Members' cellular telephones using an ATDS, a PTDS, and/or an APV;

ii.     Whether Defendant's ATDS or PTDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator;

14

iii.      Whether Defendant's ATDS or PTDS has the capacity to dial the telephone numbers it has generated;

iv.      Whether Defendant made calls to Plaintiff's and TCPA Class Members' cellular telephones and/or left messages on their cellular telephones using an APV;

v.      Whether Defendant's calls placed to Plaintiff's and TCPA Class Members' cellular phones were made for non-emergency purposes;

vi.      Whether Defendant's calls were made for telemarketing purposes and solicitation of money in return for goods and services;

vii.      Whether Defendant's calls were made for the purpose of collecting the Plaintiff's and TCPA Class Members' respective Debts;

viii.      Whether Defendant can demonstrate that it had prior express consent or prior express written consent for making calls to Plaintiff's and TCPA Class Members' cellular telephones using its ATDS, PTDS, and/or APV;

ix.      Whether, if the Defendant's calls placed to Plaintiff's and TCPA Class Members' cellular telephones were not made for marketing purposes but instead to collect debts, Defendant's notice of Plaintiff's and TCPA Class Members' respective bankruptcy cases and discharges revoked by operation of law, any such prior express consent to place calls to their cellular telephones using an ATDS, a PTDS and/or an APV;

x.      Whether Defendant's TCPA violations were knowing and/or willful;

15

xi.      Whether Plaintiff and TCPA Class Members are entitled to damages, declaratory and injunctive relief pursuant to the TCPA;

xii.      Whether Plaintiff and TCPA Class Members should receive double or treble damages for Defendant's TCPA violations; and

xiii.      Whether Defendant should be enjoined from such conduct in the future.

c.      There is also a well-defined community of interest in the questions of law and fact involved affecting the FDTUPA Sub-Class Members.  Among the questions of law and fact which are common to the FDUTPA Sub-Class, and which predominate over questions affecting individual FDUTPA Sub-Class Members, are the following:

i.      Whether Defendant's unlawful telemarketing and solicitation of monies from Plaintiff and FDUTPA Sub-Class Members in return for lien settlement services is deceptive and unfair;

ii.      Whether Plaintiff and FDUTPA Sub-Class Members are entitled to damages, declaratory and injunctive relief pursuant to FDUTPA.

65.      This action is properly maintainable as a class action.

66.      Defendant has acted, or refused to act, on grounds generally applicable to the Classes in that it has engaged in a routine and systematic course of conduct by making non-emergency calls to Plaintiff's, Class Members' and Sub-Class Members' cellular telephones using an ATDS, PTDS, and/or APV without their prior express consent or prior express written consent.

67.      Injunctive and declaratory relief is appropriate with respect to the Classes as a

whole as a result of the Defendant's routine and systematic course of conduct.

68.    Plaintiff's claims are typical of the claims of the proposed Classes.

69.    Plaintiff will fairly and adequately protect the interest of the Classes.

70.    To that end, Plaintiff has gathered and reviewed all relevant documents necessary for filing this case and has and will continue to proactively participate in this class litigation, thoroughly reviewing documents, asking questions and following the counsel of her lawyers for the benefits of the Classes she seeks to represent.  Plaintiff has no interests antagonistic to that of the Classes or any Class Members and will fairly and adequately protect the interests of all Class Members.

71.    Plaintiff has retained as counsel attorneys that are experienced in consumer, class action and complex litigation.  More specifically, Plaintiff has retained a firm whose members are board certified in consumer bankruptcy law and trial practice, with specific experience in certifying class actions at the trial court level, defending certified classes on appeal, and assisting class representatives with all aspects of class action litigation.  Plaintiff's counsel will fairly and adequately represent Plaintiff and the interests of the Class Members.

72.    Adjudication of this case on a class-wide basis is manageable by this Court.  The circumstances giving rise to Plaintiff's and each TCPA Class Members' claims throughout the United States of America, and each FDUTPA Sub-Class Members' claims throughout the State of Florida, are the same or are so similar as to be legally and factually indistinguishable in all material respects.  As a result, it will not be difficult for the Court or the jury to determine whether the Defendant has violated the TCPA or FDUPTA or both.  This Court is an appropriate forum for this dispute.

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.      given the size of the proposed classes, individual joinder of each Class Member's TCPA and FDUPTA claims is impracticable;

b.      given the potential relatively small damages suffered by each individual Class Member, as well as the unlikelihood that many Class Members will know their rights have been violated, most Class Members have little ability to prosecute an individual action due to the complexity of issues involved in this litigation and the significant costs attendant to litigation on this scale;

c.      when the liability of Defendant has been adjudicated, claims of all Class Members can be determined by the Court;

d.      this action will cause an orderly and expeditious administration of Class Members' claims, and economies of time, effort and expense will be fostered and uniformity of decisions will be ensured;

e.      other available means of adjudicating the claims of Plaintiffs and Class Members—such as thousands if not tens of thousands of individual actions brought separately and pursued independently in courts throughout the United States and the State of Florida—are impracticable and inefficient;

f.      without a class action, Class Members will continue to suffer damages and the violations of law by Defendant will proceed without remedy while they continue their unlawful informational sharing campaign regarding lien settlement; and

g.      this action presents no difficulties that would preclude management by the

Court as a class action.

## COUNT ONE:
## TELEPHONE CONSUMER PROTECTION ACT-
## NEGLIGENT VIOLATION OF 47 U.S.C., SECTION 227(b)(1)(A)

Plaintiff re-alleges paragraphs one (1) through seventy-three (73) as if fully restated herein and further states as follows:

74.     Defendant is subject to, and has violated the provisions of the TCPA, 47 United States Code, Section 227 (b)(1)(A), by using an automatic telephone dialing system (ATDS), a predictive telephone dialing system (PTDS), and/or an artificial or pre-recorded voice (APV) to call a telephone number assigned to a cellular telephone service without possessing Plaintiff's or TCPA Class Members' prior express consent or prior express written consent to do so.

75.     Defendant's use of an ATDS, a PTDS, or an APV when calling Plaintiff's and TCPA Class Members' cellular telephones constitutes numerous and multiple violations of the TCPA.

76.     More specifically, Defendant called Plaintiff's and TCPA Class Members' cellular telephones without their prior express consent.  Defendant either obtained and called Plaintiff and TCPA Class Members cellular telephone numbers from their respective Debt applications or from skip tracing public records to obtain their cellular telephone numbers.  In either scenario, Defendant does not possess prior express consent to make such calls.

77.     If Defendant obtained Plaintiff's and TCPA Class Members' cellular telephone numbers from their Debt applications (i.e., the transactions giving rise to the Debt), any such prior express consent to call their cellular telephone numbers was forever terminated by

operation of law upon receiving actual notice of Plaintiff's and TCPA Class Members' respective bankruptcy cases.

78.     Alternatively, if Defendant obtained Plaintiff's and TCPA Class Members' cellular telephone numbers from a skip trace, Defendant never obtained Plaintiff's and TCPA Class Members' prior express consent or their prior express *written* consent to call their cellular telephones using an ATDS, a PTDS, and/or an APV.  Instead, rather than consensually getting Plaintiff's and TCPA Class Members' cellular telephone numbers with specific permission on how it could call, Defendant took their cellular telephone numbers and invaded Plaintiff's and TCPA Class Members' privacy.

79.     As a direct and proximate result of the Defendant's conduct, Plaintiff and TCPA Class Members have suffered the periodic loss of their cellular phone service, lost material costs associated with the use of cellular phone minutes allotted under their cellular phone service contracts, suffered statutory damages, and have incurred the expenditure of costs and attorney's fees associated with the prosecution of this matter.

## COUNT TWO:
## TELEPHONE CONSUMER PROTECTION ACT-
## WILLFUL VIOLATION OF 47 U.S.C., SECTION 227(b)(1)(A)

Plaintiff re-alleges paragraphs one (1) through seventy-nine (79) as if fully restated herein and further states as follows:

80.     Defendant's conduct, complained of herein, is the result of a repeated willful and knowing violation of the TCPA.

81.     Defendant knows—in fact its business model is primarily predicated upon—sending letters and placing calls to consumers to provide lien settlement information on loans and liens included and discharged in a bankruptcy.

82.     Defendant's knowledge of Plaintiff's and TCPA Class Members' bankruptcies is evident as it goes to great length to advise Plaintiff and TCPA Class Members that the letters and calls are purportedly not attempts to collect the Debts for this very reason:  the bankruptcies.

83.     Defendant has implicitly, if not expressly, acknowledged that auto-dialing Plaintiff and TCPA Class Members' cellular telephones, allegedly gaining their prior express consent to dial their cellular telephone numbers via their respective Debt applications, would be unlawful as a result of Plaintiff's and TCPA Class Members' bankruptcies, their automatic stays and their discharges.

84.     Because Defendant knows that it cannot collect Plaintiff's and TCPA Class Members' Debts, and Defendant stays abreast of laws regarding use of an ATDS, Defendant knows it cannot rely upon Plaintiff's and TCPA Class Members' provision of their respective cellular telephone numbers in their credit applications to autodial Plaintiff's and TCPA Class Members' using an ATDS, a PTDS and/or an APV.

85.     Defendant also knows that it does not, and has not, reached out to Plaintiff and TCPA Class Members to independently obtain Plaintiff's and TCPA Class Members' prior express consent—oral, written or otherwise—to telemarket to and solicit from Plaintiff and TCPA Class Members on their cellular telephones using an ATDS, a PTDS and/or an APV.

86.     Defendant, as evidenced from the claims on its website, is fully aware of the TCPA and its restrictions and, as such, Defendant's calls constitute numerous and multiple knowing and/or willful violations of the TCPA.

87.     As a result of Defendant's knowing and willful violations of the TCPA, Plaintiff and TCPA Class Members are entitled to an award of up to treble statutory damages (i.e., $1,500.00) for each and every violation pursuant to 47 U.S.C., Section 227(b)(3)(B) and 47 U.S.C., Section 227(b)(3)(C).

**COUNT THREE:**
**DECEPTIVE AND UNFAIR TRADE PRACTICES-**
**VIOLATION OF FLORIDA STATUTES, SECTION 501.201 ET SEQ.**

Plaintiff re-alleges paragraphs one (1) through seventy-three (73) as if fully restated herein and further states as follows:

88.     Plaintiff and FDUTPA Sub-Class Members are consumers within the meaning of Florida Statutes, Section 501.203.

89.     Defendant's use of unlawful means to telemarket and solicit monies from Plaintiff and FDUPTA Sub-Class Members violates such consumers' privacy and constitutes unfair, deceptive and unconscionable acts within the meaning of Florida Statutes, Section 501.204.

90.     In addition, Defendant's unlawful and deceptive telemarketing, solicitation, and lien settlement practices are likely to mislead Plaintiff and FDUTPA Sub-Class Members into believing that the consumer may be legally responsible for amounts no longer due and owing on mortgage notes that have been discharged.

91.     As a result of Defendant's unlawful conduct, Plaintiff and FDUTPA Sub-Class Members have been damaged.

**COUNT FOUR:**
**DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff re-alleges paragraphs one (1) through seventy-three (73) as if fully restated herein and further states as follows:

92.     Unless Defendant is immediately enjoined from continuing its attempts to invade Class Members privacy and unlawfully telemarket lien resolution services to Plaintiff and Class Members using an ATDS, a PTDS and/or an APV without the appropriate prior express consent, Plaintiff and Class Members will suffer irreparable injury.

93.     Plaintiff and Class Members have no adequate remedy at law.

94.     Plaintiff and Class Members have a clear legal right to the protections of the TCPA, as provided under 47 United States Code, Section 227.

95.     The requested injunction is reasonably necessary to protect the legal rights of Plaintiff and Class Members and will have no adverse effect on the public welfare.

**PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of the Defendant's conduct, Plaintiff and Class Members respectfully request against Defendant entry of:

a.     Judgment against Defendant declaring that this lawsuit is properly maintainable as a class action, an order certifying the TCPA Class requested herein, and appointing Plaintiff as class representative to act on behalf of the TCPA Class and appointing her attorneys as counsel for the TCPA Class;

b.     Judgment against Defendant declaring that Defendant violated the TCPA;

c.     Judgment against Defendant declaring that this lawsuit is properly maintainable as a class action, an order certifying the FDUTPA Sub-Class requested

herein, and appointing Plaintiff as class representative to act on behalf of the FDUTPA Sub-Class and appointing her attorneys as counsel for the FDUTPA Class;

d.      Judgment against Defendant declaring that Defendant violated the FDUTPA;

e.      Judgment against Defendant for statutory damages in the amount of $500.00 for each of Defendant's telephone call that violated the TCPA;

f.      Judgment against Defendant for treble damages in the amount of $1,500.00 for each telephone call that violated the TCPA for which Defendant acted knowingly and/or willfully;

g.      Judgment against Defendant for actual damages Plaintiff and FDUTPA Sub-Class Members sustained for Defendant's violation of FDUTPA;

h.      Judgment providing declaratory and injunctive relief, prohibiting Defendant from further engaging in conduct that violates the TCPA and FDUTPA;

i.      Judgment for an award of attorneys' fees and costs; and

j.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff and Class Members hereby demand a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its representatives safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this potential litigation as required by law.

Dated: September 26, 2014

Respectfully Submitted,

**LEAVENLAW**

 /s/ *Ian R. Leavengood*

**[X]Ian R. Leavengood, Esq., FBN 0010167**
**LEAD TRIAL COUNSEL**
**[   ] Aaron M. Swift, Esq., FBN 093088**
**[   ] G. Tyler Bannon, Esq., FBN 105718**
**[   ] Greg H. Lercher, Esq., FBN  0106991**
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone:  (727) 327-3328
Fax: (727) 327-3305
ileavengood@leavenlaw.com
aswift@leavenlaw.com
tbannon@leavenlaw.com
glercher@leavenlaw.com
*Attorneys for Plaintiff and Class Members*